UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
EASTERN DIVISION at PIKEVILLE

CRIMINAL ACTION 23-CR-00009-DCR

UNITED STATES OF AMERICA                                                                    PLAINTIFF,

V.                              **SENTENCING MEMORANDUM**

JASON STAMPER                                                                                 DEFENDANT.

\* \* \* \* \* \* \* \* \*

The Defendant, Jason Stamper, comes before this Honorable Court for final sentencing on July 15, 2024. The Defendant provides this Sentencing Memorandum and Objection to PSR in accordance with the terms of this Honorable Court's Sentencing Order. [R. 59, *Sentencing Order*, ¶ 7 PageID#157].[1]

### I.   FACTUAL & PROCEDURAL BACKGROUND

Defendant was indicted on May 24, 2023, by a federal grand jury sitting in London, Kentucky. [R. 1, *Indictment*, PageID# 1-3]. The Defendant was charged with four (4) counts of knowing distribution of amphetamine outside the scope of

---

[1] Pursuant to the Court's Order, the undersigned respectfully submits that good cause exists for the filing of this matter outside of the time specified within the Order. The ten (10) day deadline therein ran on Friday, July 5. The final PSR, with second addendum, which included a material change in the Defendant's Guideline range, was not received by the undersigned until 5:34PM on Monday, July 8.

professional practice and not for a legitimate medical purpose, in violation of 21 U.S.C. § 841(a)(1). [*Id.*].

### A. PLEA AGREEMENT

The Defendant entered a plea of guilty to Count One of the Indictment, charging him with a violation of 21 U.S.C. § 841(a)(1), knowing distribution of amphetamine outside the scope of professional practice and not for a legitimate medical purpose. [R. 55, *Plea Agreement*, PageID# 142]. The Presentence Investigation Report (PSR), as currently calculated, indicates that the Defendant's guideline range of imprisonment is 41 months to 51 months. [*PSR* ¶ 85].

### B. OBJECTIONS TO PSR

The Defendant submitted two objections to the United States Probation Office, which will be addressed in turn below. The first relates to the addition of .83 grams of amphetamine within the Defendant's drug quantity calculation. The Defendant maintains that this quantity should not be included as it was from a valid prescription written to the Defendant. The second objection relates to the Defendant's sole conviction, which occurred following a trial *in absentia*. The Defendant argues that this conviction was unconstitutionally obtained, and that the Defendant should not be assessed any criminal history points for the conviction.

C. IMPACT OF OBJECTIONS ON SENTENCING GUIDELINES

The drug quantity objection, if resolved in the Defendant's favor, does not impact the sentencing guidelines. [PSR Addendum at pp. 26-27].

The issue as to the *in absentia* conviction, on the other hand, would have a profound impact on the Defendant's guidelines. Not only would the Defendant's criminal history category be reduced from II to I, but the Defendant would also be eligible for a two-point reduction in his offense level per the provisions of USSG § 4C1.1. The impact on the Guideline Range is set forth in Table I-1 *infra*:

**Table I-1. Impact of Objection**

|  | **Current PSR** | **PSR if Objection Sustained** |
|---|---|---|
| Criminal History Score | 2 | 0 |
| Offense Level | 21 | 19 |
| Criminal History Category | II | I |
| Guideline Range | 41-51 months | 30-37 months |

II. ARGUMENT

Prior convictions that are demonstrably obtained in the presence of structural constitutional error cannot be used to enhance a defendant's sentence. Federal courts have the authority to look beyond the simple fact of an underlying conviction in a limited set of circumstances. For example, 21 U.S.C. § 851 permits a defendant to assert a claim that a prior conviction was "obtained in violation of the Constitution

3

of the United States." 21 U.S.C. § 851(c)(2). In the case *sub judice*, the Defendant's sole conviction was obtained by a state court conviction irrevocably tainted by structural constitutional error. Therefore, it cannot be counted towards the Defendant's criminal history score.

### A. FLOYD COUNTY CONVICTION WAS OBTAINED IN VIOLATION OF DEFENDANT'S RIGHT TO COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS

The Floyd County conviction is constitutionally invalid as it was obtained in violation of the Defendant's right to counsel. As an initial matter, the Defendant had a right to counsel in relation to the misdemeanor charges in the Floyd County case, as a sentence of imprisonment was imposed. *Scott v. Illinois*, 440 U.S. 367 (1979) (holding that where a criminal defendant is sentenced to a term of incarceration, the Sixth and Fourteenth Amendments provide a right to counsel).

The United States Supreme Court has affirmatively permitted challenges to underlying state court convictions that are obtained in violation of the right to counsel. *Custis v. United States*, 511 U.S. 485, 487 (1994) (limiting challenges to ACCA predicate convictions to right to counsel). The record herein reflects, beyond contestation, that the Defendant was denied presence of counsel during a critical stage of the prosecution (i.e. the trial). Therefore, there is no possibility that the Defendant received effective assistance of counsel. *See United States v. Cronic¸* 466 U.S. 648, 666 (1984) (reversing case where the circumstances themselves did not

4

"make it unlikely that the defendant <u>could</u> have received effective the effective assistance of counsel.") (emphasis added).

*Custis* limited the challenge to those where a defendant was "completely deprived of counsel" in large part because the Court rightly feared that such reviews could be extremely "fact-intensive," and would involve situations where there were inadequate or unavailable state records, and that the practice of challenging predicate convictions could "pose a risk of unduly delaying and protracting the entire sentencing process." *Id.* at 489. Where, as in this case, the Defendant can show that he was denied the assistance of counsel at trial due to the complete absence of trial counsel, the concerns set forth in *Custis* are eliminated. This is so because the question can be resolved by a simple "yes" or "no" question, namely: "was counsel wholly absent from the trial." Where the answer, as here, is "yes," then the conviction was clearly obtained in violation of the right to counsel.[2]

This analysis is made easier by the fact that the violation of the right to counsel is a structural error which is not subject to a "harmless error" analysis. *Arizona v. Fulminate*, 499 U.S. 279, 310 (1991). "The entire conduct of the trial from beginning to end is obviously affected by the absence of counsel for a criminal

---

[2] The simplicity of this resolution avoids more thorny issues such as: defendants who terminate counsel during trial; defendants who choose to represent themselves; counsel who absent themselves from portions of trial only. This matter involves an attorney who was counsel throughout the proceeding below, who never withdrew from the case, and who was proven to be absent throughout the entirety of the trial.

5

defendant." *Id.* Therefore, should this Court sustain the Defendant's objection, it does not require a deeper probing into the conduct of the state court trial. Again, it is a simple "yes" or "no" question.

### B. TRIAL IN ABSENTIA VIOLATED THE DEFENDANT'S RIGHT TO BE PRESENT AT TRIAL

"The right of an accused to be present at his trial is traceable to the earliest days of Anglo-Saxon law." Starkey, James *Trial in Absentia*, St. John's Law Review Vol. 53 (1979). While the Supreme Court has formally recognized that a trial can proceed without the presence of a defendant for more than a century, these cases usually involve misconduct or formal waiver on the part of the defendant. *See Diaz v. United States*, 223 U.S. 442 (1913); *Taylor v. United States*, 414 U.S. 17 (1973).

In the present case, the Defendant's rights to be present under both the Fifth and Sixth Amendments to the United States Constitution, as incorporated within the Fourteenth Amendment, were violated when he was tried *in absentia* in Floyd County. There was simply no evidence that the Defendant knowingly and voluntarily waived his right to be present, or that his absence was an attempt to frustrate or delay the proceedings. As with the argument *supra*, while this Honorable Court cannot overturn the results of the state court proceeding, it has the power to prevent the spread of the unconstitutional contagion that infects the Defendant's conviction below. The Defendant's Floyd County conviction should not be assessed criminal history points herein.

C. SUMMARY

In sum, where a Defendant has been deprived of the assistance of counsel at trial, and was not himself present at trial, there are multiple constitutional considerations that prohibit said conviction from being used to increase the Defendant's federal sentencing guidelines.

III. THE DEFENDANT SHOULD RECEIVE A SENTENCE BELOW THE THE GUIDELINE RANGE

The Defendant entered a plea of guilty to Count One of the Indictment, charging him with a violation of 21 U.S.C. § 841(a)(1), knowing distribution of amphetamine outside the scope of professional practice and not for a legitimate medical purpose. [R. 55, *Plea Agreement*, PageID# 142]. A sentence below the Guideline range is "sufficient, but not greater than necessary" to accomplish the purposes of sentencing. 18 U.S.C. § 3553(a). The Defendant would request a sentence of time served. An analysis of several of the 3553 factors is key to this detemination.

(1) History and Characteristics of the Defendant

The letters in support filed on behalf of the Defendant do an admirable job of setting forth the Defendant's personal background and general nature. Dr. Stamper has been a well-respected member of the medical community for many years, and the letters universally reflect the writers' beliefs that he has a compassionate and giving nature.

Professionally, it is also worth noting that the Kentucky Cabinet for Health and Family Services, Office of Inspector General, had conducted a review of Dr. Stamper's prescribing practices from December 5, 2018 through July 7, 2020 and concluded: "A thorough review of Dr Stampers [sic] KASPER report did not indicate any irregular or excessive prescribing during the reported period." [PSR at p. 28]. The report specifically noted that there were no patients who were selected for a closer review because after a 376-page KASPER report was examined, no patients were identified as excessive. [*Id*.].

The Defendant, therefore, is not someone who has had a long history of flaunting the law, or of operating the sort of "pill mill" facilities that have plagued Eastern Kentucky in recent decades. He was, on the other hand, a well-respected professional, who had a clean audit by the state when one was conducted in 2020. The Defendant admittedly began to struggle with a relapse into methamphetamine, and was also overwhelmed with taking over his grandfather's medical practice. This combination of factors led to the Defendant being here before this Court, and pleading guilty to the offense for which he is being sentenced.

The Defendant's PSR reflects a wide range of professional accolades and activities, including numerous awards for community service. Other than the Floyd County offense discussed *supra*, the Defendant has no criminal history. Quite simply, the Defendant's history and characteristics show that he is capable of being

a high-functioning, law-abiding citizen, and that further imprisonment is not necessary to accomplish the purposes of 18 U.S.C. § 3553.

**(2) Need to Avoid Unwarranted Sentencing Disparities**

A federal sentence must also seek to "avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The Sixth Circuit has held "this factor concerns *national* disparities between defendants with similar criminal histories convicted of similar criminal conduct." United States v. Mitchell, 681 F.3d 867, 883 (6th Cir. 2012) (emphasis in original). Table III-1 below reflects the national sentencing statistics for offenses similar to that for which the Defendant has been convicted.

**Table III-1**
**Sentences Imposed Relative to Guideline Range FY 2023[3]**

| Outcome | Number | Percentage |
|---|---|---|
| Within Range | 82 | 17% |
| Upward Departure | 0 | 0% |
| 5K1.1 Substantial Assistance | 124 | 25.8 |
| 5K3.1 Early Disposition Program | 50 | 10.4% |
| Downward Departure – Gov't Motion | 9 | 1.9% |
| Non-Gov't Downward Departure | 6 | 1.2% |
| Upward Variance | 8 | 1.7% |
| Downward Variance – Gov't Motion | 57 | 11.9% |
| Non-Gov't Downward Variance | 145 | 30.1% |

---

[3] Data set for following parameters: primary guideline of 2D1.1; college graduate; criminal history categories I and II.

Data from USSC Interactive Data Analyzer (last visited July 8, 2024).

The data reflects that only 19% of the defendants within parameters similar to the Defendant were sentenced above or within their respective Guideline ranges. As shown in Chart III-2, of 969 individuals with similar parameters to the Defendant between 2015 and 2023, when an individual was sentenced within the Guideline range, the majority were sentenced to the minimum of the range.

**Chart III-2**
**Distribution of Within-Guideline Sentences**



Recognizing, of course, the limitations of such data, and the fact that it includes a wide range of trafficking convictions, a downward variance would not create unwarranted sentencing disparities.

### (3) <u>Need to Protect the Public</u>

The United States Sentencing Commission notes that only 19.9% of Criminal History Category I offenders are rearrested for a new crime after being released into the community on probation or after completing supervised release. This number rises to 33.0% for Criminal History Category II. U.S. Sentencing Commission, *Recidivism Among Federal Offenders: A Comprehensive Overview* (March 2016). Further, the Defendant's age is a factor in his favor, as offenders between the ages of 51 to 60 at the time of sentencing only have a reconviction rate of 11.9%, which is the second-lowest rate among all offenders studied. *Id.* Moreover, the reconviction rate for college graduates is 10.4%. *Id.*

In short, Dr. Stamper's age, background and education reflect a high likelihood that he will not be rearrested or reconvicted. To the extent that the Defendant's past drug use is a concern, any danger to the public can be mitigated through treatment. The Defendant will be on supervised release, and will be able to undergo treatment while under the supervision of the United States Probation Office. The Defendant had a fifty-year run of compliance with the law prior to the timeframe encapsulated by the indictment. In addition, post-conviction restrictions on his medical license will obviate any danger of a repeat of the type of behavior covered by the indictment.

**(4) <u>Promote Respect for the Law/Deterrence</u>**

The Defendant respectfully submits that the time that the Defendant has served in this matter is sufficient, but not greater than necessary, to comply with these stated goals of 18 U.S.C. § 3553. As to the issue of deterrence, the Defendant has not previously served time in jail until the current issues that he has encountered. The Defendant has also served nearly a year of time in the Pike County Detention Center; local facilities such as Pike County, by necessity, operate on much more of a "lock down" methodology with federal pre-trial inmates. The Defendant has had more limited access to medical care and no access to the employment/recreation/training programs available in the Bureau of Prisons. In short, local time is "hard time" in terms of daily activities.

In addition, the Defendant has suffered major professional ramifications for his actions, and is losing his ability to practice medicine, possibly on a permanent basis. For professional individuals, the combination of hard time and major financial/professional implications is sufficient deterrence. The Defendant previously reported income between $160,000 to $260,000 annually. This will not be the case going forward. Any additional punishment of the Defendant in the form of prison time runs a substantial risk of being merely punitive.

## IV. CONCLUSION

For the foregoing reasons, the Defendant respectfully requests that his objection be sustained, and that he be sentenced to time served.

This the 9th day of July, 2024.

/s/ Noah R. Friend
Noah R. Friend Law Firm, PLLC
P.O. Box 341
Versailles, KY 40383
606-369-7030 [Phone]
502-716-6158 [Fax]
noah@friendlawfirm.com
COUNSEL FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of July, 2024, a true and correct copy of the foregoing was electronically filed with the Court using the CM/ECF system, which sent notification to all counsel of record herein.

/s/ Noah R. Friend
Noah R. Friend